PEOPLE *v.* MAXWELL.

1. Criminal Law—Evidence—Failure to Object Before Case Submitted to Jury—Venue.

Defendant's contention that there was no proof that offense of assault with intent to rape was committed in city of Detroit, even though tried in Detroit Recorder's Court, *held,* not tenable as there was ample evidence in record from which jury could conclude that offense was committed in city of Detroit and defendant failed to object to lack of proof of venue before the case was submitted to jury (CLS 1961, § 750.85, CL 1948, § 767.45).

2. Same—Instructions—Burden of Proof.

Instruction by trial court of general duties of juror in criminal case *held,* unobjectionable, where court included specific instruction that prosecution had burden of proving guilt beyond a reasonable doubt and instructions, as a whole, were fair and adequate.

3. Same—Jury—Coercion by Trial Judge.

Jury *held,* not coerced to decide case by trial judge's inquiry at 5:31 p.m. on third day of trial if jury could decide case within the next 15 minutes and jury returned a verdict of guilty at 5:56 p.m., where a fair reading of colloquy between court and jury indicates that inquiry was a reasonable interrogation of jury designed to obtain a considered verdict rather than to force a hasty verdict.

Appeal from Recorder's Court; Baldwin (George S.), J., presiding. Submitted Division 1 February

References for Points in Headnotes

[1]  21 Am Jur 2d, Criminal Law §§ 399, 401.
[2]  53 Am Jur, Trial § 511.
[3]  21 Am Jur 2d, Criminal Law § 299; 53 Am Jur, Trial §§ 511, 950, 951, 958.

9, 1966, at Lansing.  (Docket No. 80.)  Decided May 11, 1966.  Rehearing denied June 8, 1966.

Jessie Maxwell was convicted of assault with intent to rape.  Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, and *Samuel J. Torina,* Chief Appellate Lawyer, for the people.

*Peter P. Cobbs,* for defendant.

T. G. Kavanagh, J.  The defendant was found guilty of assault with intent to rape* by a jury in recorder's court for the city of Detroit.

He appeals his conviction asserting three errors:

1. There was no testimony at the trial that the offense was committed in the city of Detroit.

2. The court's instruction on the degree of proof necessary to convict was erroneous.

3. The court coerced the jury by inquiring if they could reach a verdict in 15 minutes.

While there is ample evidence in the record from which the jury could conclude that the offense charged was committed in the city of Detroit (*People* v. *Andrews* [1960], 360 Mich 572), there is no direct testimony in the record to that effect.

We do not regard this as fatal, however, because we are precluded from disturbing the verdict on this account by the provisions of CL 1948, § 767.45 (Stat Ann 1954 Rev § 28.985) which reads in part:

"3. That the offense was committed in the county or within the jurisdiction of the court. *But no verdict shall be set aside or new trial granted by reason*

* See CLS 1961, § 750.85 (Stat Ann 1962 Rev § 28.280).—Reporter.

*of failure to prove that the offense was so committed unless the accused have raised such question before the case is submitted to the jury."* (Emphasis added.)

The information here properly placed the venue. The question was not raised before the case was submitted to the jury. We cannot consider it now. *People* v. *Scaduto* (1942), 303 Mich 307.

The trial court in his instructions to the jury said:

"If we are to preserve our system of justice and liberty, laws must be enforced, and juries should render verdicts of guilty if the evidence warrants it. On the other hand, respondents have certain rights and they are not to be convicted and deprived of their liberties without substantial evidence against them. That, in general, is your duty as jurors."

The appellant asserts this as erroneous instruction on the degree of proof required for conviction.

The quoted language is the concluding paragraph of that part of the court's instruction on the jury's general duties and responsibilities made at the beginning of the charge.

In context it is wholly unobjectionable as a general statement. The court later specifically instructed the jury:

"On the other hand, the respondent has pleaded not guilty, and by his plea of not guilty, the burden was cast upon the prosecution to prove beyond a reasonable doubt that he was guilty. * * *

"The respondent comes into this court presumed to be innocent. He does not have to prove his innocence. But the burden is upon the prosecution to produce evidence which convinces you beyond a reasonable doubt of the respondent's guilt. If the prosecution proves .that then your verdict should be guilty. If the prosecution fails to prove that then your verdict should be not guilty."

Altogether the instructions in our view are fair and adequate. See *People* v. *Loudenslager* (1950), 327 Mich 718, and *People* v. *Serra* (1942), 301 Mich 124.

The trial of this case had taken three days. It had started on Wednesday and had been given to the jury on Friday, when the jury began its deliberation at 4:45 p. m. At 5:31 p. m. the jury was recalled to the courtroom and the following transpired:

"*The Court:* Ladies and gentlemen of the jury, you have deliberated a little less than an hour but it is getting late and I wanted to inquire into the state of your deliberations.

May I inquire if you have selected a foreman?

"*Juror Crayton:* We have, and I am the foreman, Your Honor.

"*The Court:* Your name?

"*Foreman Crayton:* Crayton.

.."*The Court:* You have been here a long time today and in consideration of the fact that some of you have a long way to go in this city of Detroit, I wish to inquire of you, Mr. Foreman, if you feel you cannot arrive at a verdict within the next 15 minutes and, if so, I am inclined to dismiss you until tomorrow morning at 9:30.

"*Foreman Crayton:* I do feel, Your Honor, we would reach a decision within the next 15 minutes.

"*The Court:* Do I understand that the majority of the jurors would rather go home and come back here tomorrow to continue deliberation or is it the other way around—let's take a vote—who would like to stay, with a show of hands, please?

"[Whereupon all jurors raised their hands.]

"*The Court:* Very well, I will release you to continue your deliberations again.

"You may return to the jury room."

The jury was then excused at 5:35 p. m. and returned with its verdict at 5:56 p. m.

The appellant contends this action by the court amounted to coercion of the jury.

We do not agree. A fair reading of this colloquy convinces us that it was a reasonable interrogation of the jury designed to obtain a considered verdict rather than to force a hasty one. See *People* v. *Pizzino* (1945), 313 Mich 97, and *People* v. *Kasem* (1925), 230 Mich 278.

Our consideration of the record satisfies us that the defendant had a fair trial.

Affirmed.

LESINSKI, C. J., and QUINN, J., concurred.